UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WHITEAMIRE CLINIC, P.A., INC., ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CARTRIDGE WORLD OF NORTH ) <br> AMERICA, LLC., ) <br> Defendant. ) | Case. No.: 1:24-cv-06753 |

**PLAINTIFF'S SUPPLEMENT TO ITS MOTION TO APPOINT RECEIVER**

NOW COMES Plaintiff, Whiteamire Clinic P.A., Inc. ("Plaintiff" or "Judgment Creditor"), by and through its undersigned counsel, Ross M. Good, respectfully submits this supplement to its motion ("Motion") [Doc. #9] for the appointment of a receiver to take possession and control of the assets of Judgment Debtor, Cartridge World North America, LLC. ("Judgment Debtor" or "Cartridge World"), pursuant to Rule 66 of the Federal Rules of Civil Procedure and Illinois law governing enforcement of judgments, specifically 735 ILCS 5/2-1402. In further support of the Motion, Plaintiff states as follows:

**Service on the Judgment Debtor**

1. Plaintiff has caused a copy of the Motion to be served on the Judgment Debtor at its last-known addresses via Certified Mail:

    a. Cartridge World North America, LLC, 3917 Mercy Dr, McHenry, IL 60050 with a UPS tracking number of 1ZA8Y6770393933362. Proof of delivery is attached as Exhibit A.

    b. Cartridge World North America, LLC c/o CT Corporation System, 701 S Carson St, Ste 200, Carson City, NV 89701 with a UPS tracking number of 1ZA8Y6770394338370. Status of delivery is attached as Exhibit B.

### Retention of Katten Muchin Rosenman LLP as Receiver's Counsel

2. Plaintiff's Proposed Receiver, Gregg Szilagyi, seeks authority to retain Terence G. Banich and Katten Muchin Rosenman LLP ("Katten") as his counsel. A true and correct copy of the proposed receiver's retention agreement with Katten is attached as Exhibit C.

3. Mr. Banich is an attorney licensed to practice law in, and is a member in good standing of the bars of, the State of Illinois, the State of California and the District of Columbia, and has been duly admitted to practice before the Supreme Court of the United States, several United States Courts of Appeal and several United States District Courts, including this Court and its Trial Bar. Mr. Banich is a partner in the Insolvency and Restructuring department of Katten, a full-service law firm with nearly 700 attorneys in locations across the United States. During his career, Mr. Banich has represented federal receivers appointed in multiple cases in different federal and state jurisdictions, and has also represented various other fiduciary clients, such as debtors in possession and chapter 7 and 11 bankruptcy trustees.

4. Mr. Szilagyi proposes that the Court authorize Katten to render the following legal services on his behalf:

   a. Advise the Receiver with respect to his rights, duties and responsibilities under the receiver order and applicable law, and with regard to the administration of the receivership case;

   b. Assist the Receiver in his investigation of the acts, transactions, conduct, assets, liabilities and financial condition of the Judgment Debtor and its insiders, affiliates and potential successors;

   c. Assist the Receiver in obtaining custody and control over property of the receivership estate within and without this federal district;

   d. Assist and advise the Receiver with respect to sale of property of the receivership estate;

   e. Assist and advise the Receiver in my investigation and pursuit of litigation, particularly including fraudulent transfer, successor liability and insider preference actions;

    f. Prepare on behalf of the Receiver any applications, motions, pleadings, orders, reports, agreements and other legal documents, including interim and final applications for payment of fees and reimbursement of expenses;

    g. Confer with parties in interest and their counsel;

    h. Appear in court for hearings in this case and any related litigation;

    i. Assist the Receiver in identifying, and retaining and appointing, any other professional persons;

    j. Perform such other legal services (but not including tax law services) as may be necessary, or that the Receiver may request, from time to time.

5. Katten has no connections with the Plaintiff or Judgment Debtor, and neither holds nor represents any adverse interest in connection with the matters upon which Katten is to be employed by the Receiver.

6. Katten's fees for this engagement will be based upon its hourly rates. Mr. Banich's current hourly rate is $1,220, and the associate attorney who is likely to work on this matter has a current hourly rate of $875. Katten adjusts its rates annually in response to market trends and other factors, generally in the first calendar quarter of the year. Mr. Banich would serve as lead counsel, and will provide legal advice to the Receiver relating to the administration of the estate, recovery of estate assets and pursuing litigation, and will supervise the preparation of all pleadings, motions and other documents to be filed with the Court. Associates would assist with these matters as the Receiver may from time to time direct.

7. Katten will also seek reimbursement of its out-of-pocket expenses, which include items such as consultants, experts, filing fees, court reporting fees, travel costs, overnight or other special mail services, messenger services, photocopies, long distance telephone, outgoing faxes, research service charges (e.g., Westlaw), secretarial and other staff overtime charges (when required to meet the needs of the matter), and other special services such as document imaging. Katten typically advances those costs on its client's behalf and includes them in its

monthly bills, though some large disbursements may be forwarded to the client for direct payment.

8. Katten acknowledges that the sole source of its compensation in this case will be funds in the receivership estate.

**Powers of the Receiver**

9. Conferring broad powers on the Receiver—as paragraph 3(a) would do—is consistent with applicable Illinois law.[1] By issuing citations to discover assets to enforce its judgment, Plaintiff has commenced a supplementary proceeding. Ill. S. Ct. R. 277(b) ("The supplementary proceeding shall be commenced by the service of a citation on the party against whom it is brought."). Supplementary proceedings are generally governed by section 2-1402 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-1402; *see, e.g., In re Concepts Am., Inc.*, No. 1:20-CV-06599, 2024 WL 2209354, at *3 (N.D. Ill. May 15, 2024). "[S]upplementary proceedings under Section 2-1402 are designed to assist a judgment creditor in discovering assets of the judgment debtor to satisfy an unpaid judgment." *Radio One, Inc. v. Direct Media Power, Inc.*, No. 16 C 1867, 2018 WL 4685470, at *5 (N.D. Ill. Sept. 28, 2018), *aff'd*, 813 F. App'x 227 (7th Cir. 2020).

10. Section 2-1402(c)(4) authorizes the Court in a supplementary proceeding to enter any order that could be entered in a garnishment proceeding, and section 12-718 of the Illinois Code of Civil Procedure (which governs garnishment proceedings) specifically provides for the appointment of a receiver in aid of judgment collection. 735 ILCS 5/12-718 ("the court may

---

[1] State substantive and procedural law governs proceedings to enforce judgments in federal court. Fed. R. Civ. P. 69(a) ("The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."); *Kelley v. Stevanovich*, 40 F.4th 779, 786 (7th Cir. 2022) ("Rule 69 requires federal courts to apply state procedure, but Illinois law regarding supplementary proceedings provides courts with a broad authority to enforce a judgment."). So, Illinois procedural and substantive law applies here.

appoint a receiver to collect any indebtedness or to take possession, sell or otherwise dispose of any other property, and enter all orders in regard thereto which are necessary and equitable between the parties").

11. Relying on these principles, the Illinois Appellate Court has affirmed an order appointing an investigatory receiver and granting him broad authority to investigate and find unknown assets in order to enforce a judgment and pursue citations to discover assets. *Bank of Am., N.A. v. Freed*, 2012 IL App (1st) 113178, at ¶¶ 15, 34-39. Plaintiff respectfully submits the same relief is warranted here, as Judgment Debtor has engaged in a course of conduct to avoid paying this judgment or participating in litigation. *Id.* at ¶ 39 ("Here, in light of its finding that defendants had taken no steps to ensure that [a third party's] employees were abiding by the terms of the citations and had permitted nearly $5 million to be transferred to various entities in direct contradiction to the restrictions in the citations…[appointing an investigatory receiver was] not beyond the scope of authority permitted by section 12–718 of the Code."). Plaintiff's request to appoint a receiver to enforce its judgment is entirely consistent with *Freed*.

12. The Receiver needs to be able to locate and secure all assets is crucial to prevent them from being hidden, dissipated, or transferred out of reach. (Doc. 9-4 at 3(b)). By taking direct custody of the assets, the Receiver ensures they are preserved and available for liquidation to satisfy the judgment.

13. The Receiver needs to be the sole signatory for all accounts to prevent unauthorized withdrawals or transfers by Judgment Debtor's agents or representatives. (Doc. 9-4 at 3(c)). This control safeguards the funds and ensures that they are used solely for the purpose of satisfying the judgment.

14. Judgment Debtor's financial condition, liabilities, and prior transfers need to be understood to uncover hidden or improperly transferred assets. (Doc. 9-4 at 3(d)). Plaintiff has reason to believe that Judgment Debtor transferred assets to a new company shortly before entry of the judgment at issue here. (Doc. 7-7 at 7-8). Investigations into dealings with insiders or third parties help to identify and potentially reverse fraudulent conveyances or recoverable payments.

15. The Receiver needs subpoena power to compel disclosure of information from banks, third parties, and other entities that might hold or have knowledge of Judgment Debtor's assets. (Doc. 9-4 at 3(e)). This is critical for tracing assets and enforcing the judgment effectively as Plaintiff has reason to believe that Judgment Debtor transferred assets to a new company shortly before entry of the judgment at issue here. (Doc. 7-7 at 7-8). Plaintiff believes that the Receiver will likely need to utilize one or more subpoenas to compel information regarding where Judgment Debtor's assets presently are.

16. The Receiver needs authority to pursue legal actions to recover assets or resolve disputes over their ownership. (Doc. 9-4 at 3(f)). Judgment creditors often utilize fraudulent transfer and/or successor liability claims to enforce judgments. *See, e.g., Flow Cap. Corp. v. BESH Holding Corp.*, No. 17 CV 810, 2020 WL 6149568, at *5 (N.D. Ill. Oct. 20, 2020) ("Federal and state courts have interpreted Illinois law to permit Uniform Fraudulent Transfer Act and successor liability claims in connection with supplementary proceedings.") (cleaned up). Here, the Receiver would have all powers of a judgment creditor, and paragraph 3(f) confers the power to commence claims like a judgment creditor could. Such litigation would likely be fraudulent transfer and successor liability claims, but the Receiver would make the determination in consultation with his counsel whether litigation is warranted or appropriate. As previously explained, Plaintiff believes at least one other entity has knowledge of where Judgment Debtor's

assets presently are and is unlikely to disclose such information without the Receiver being empowered to obtain necessary relief in Court. Without this authority, the receiver's efforts could be stalled by uncooperative parties.

17. Paragraph 3(g) of the proposed receiver order provides that the Receiver shall have full access to Judgment Debtor's legal files. (Doc. 9-4 at 3(g)). It is well established that, upon appointment, a bankruptcy trustee or receiver of a corporate entity stands in the shoes of former management and thus controls the company's attorney-client privilege. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355-57 (1985); *Peterson v. Sanches (In re Mack Indus., Ltd.)*, 606 B.R. 313, 322 (Bankr. N.D. Ill. 2019); *United States Secs. & Exch. Comm'n v. Bravata*, No. 09-12950, 2011 WL 606745, at *2 (E.D. Mich. Feb. 11, 2011) (recognizing that *Weintraub* applies to federal equity receivers). Paragraph 3(g) simply implements existing law and avoids any doubt about whether the Receiver would control the Judgment Debtor's attorney-client privilege. Under *Weintraub*, he would. The language in paragraph 3(g) makes that clear for any third parties (most likely law firms) who might doubt the Receiver's power in this regard.

18. The Receiver needs access to communications. (Doc. 9-4 at 3(h)). Monitoring mail and electronic communications ensures the Receiver is aware of ongoing business activities, liabilities, or potential leads on hidden assets. This prevents crucial information from being missed or manipulated.

19. The Receiver needs authority to engage appropriate professional services. (Doc. 9-4 at 3(i)). The complexity of the Receiver's tasks may require expertise in accounting, law, or other fields. Hiring professionals ensures the receiver can perform his duties effectively and in compliance with all legal and financial standards.

20. In conclusion, these powers collectively empower the receiver to overcome resistance, prevent fraud, and efficiently locate and liquidate assets. Without these specific authorities, the enforcement process could be delayed or undermined, leaving the judgment unsatisfied and the plaintiff without recourse.

WHEREFORE, Plaintiff, WHITEAMIRE CLINIC, P.A., INC., respectfully requests that this honorable Court appoint Gregg Szilagyi as a receiver in this matter, and grant any other and further relief it deems appropriate.

Respectfully submitted,

                                    Respectfully Submitted,
                                    **Whiteamire Clinic P.A., Inc.**
                                    Plaintiff,

                                    /s/*Ross M. Good*
                                    One of Plaintiff's Attorneys

Ross M. Good, Esq.
The Good Law Group
800 E. Northwest Hwy, Suite 814
Palatine, IL 60074
direct: (847) 600-9576
ross@thegoodlawgroup.com
Dated: November 19, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

Dated: November 19, 2024  Respectfully Submitted,

  _/s/*Ross M. Good*_____

Ross M. Good, Esq.
The Good Law Group
800 E. Northwest Hwy, Suite 814
Palatine, IL 60074
direct: (847) 600-9576
ross@thegoodlawgroup.com